UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                    Case Number: 16-12556-13

SONDRA KAY LISSE,

        Debtor.

---

# DECISION

## Statement of Procedural History

The procedural history of this case and the disputes presented are extensive and set the stage for this decision.

The Debtor, Sondra Lisse, and her husband, Steven Lisse, are the makers of a note and the mortgagors of a mortgage related to certain real property located in Dane County, Wisconsin. HSBC Bank USA, National Association, for the benefit of ACE Securities Corp. Home Equity Loan Trust, Series 2006-NC3, Asset Backed Pass-Through Certificates ("HSBC"), filed a foreclosure action regarding that property in Dane County Circuit Court. Sondra Lisse and her husband are the defendants in that action. Mr. and Mrs. Lisse (collectively the "Lisses") filed an answer and affirmative defenses to the complaint. The Lisses sought production and inspection of the original note in that action and, on April 28, 2014, HSBC presented the note for inspection. In May 2014, HSBC moved for summary judgment. The Lisses responded in August 2014. The circuit court granted summary judgment in favor of HSBC on September 14, 2014.

The Lisses appealed the summary judgment decision. Additionally, they filed a motion with the circuit court for reconsideration and stay pending appeal. The circuit court heard and denied the motion.

The Wisconsin Court of Appeals affirmed the circuit court judgment on February 4, 2016. On March 21, 2016, Mr. Lisse filed a Chapter 13. The state court of appeals was notified of the filing and thus assumed there was a stay of proceedings (including a stay of the time to file a petition for review). On August 26, 2016, Mr. Lisse's bankruptcy case was dismissed. The time to pursue petitions for review in the Wisconsin Supreme Court were tolled and stayed, first based on the filing of Mr. Lisse's bankruptcy and then by the filing of this case on July 23, 2016.

On August 22, 2016, the Debtor filed a Chapter 13 Plan. On September 6, 2016, HSBC objected. The Chapter 13 Trustee also recommended against confirmation. On September 30, 2016, the Debtor filed a 1,380-page response to HSBC's Plan objection. On October 3, 2016, the Court held a preliminary telephonic hearing on the Chapter 13 Plan. At that hearing, the Court adjourned the confirmation hearing to November 21, 2016, and permitted discovery.

The Debtor was to serve her discovery requests by October 25, 2016. The Debtor apparently did so and under the Rules responses were due 30 days after service. HSBC requested an extension of time to respond. Debtor's counsel asked for a date by which responses could be made and then indicated "conditions" for extension would follow. HSBC requested a two-week extension.

2

On November 23, counsel for the Debtor responded that with regard to the requests to admit, the time for objections would not be extended, and that if an extension were granted as to interrogatories, responses "to each Interrogatory . . . without objection" would be required. Finally, counsel stated time "will not be extended for objections to Requests for Production" while conceding additional time might be needed to gather documents. Counsel for the Debtor then stated five additional conditions for any extension. HSBC served responses to the requests for admission and document production that were dated November 25, 2016.

On December 2, 2016, HSBC moved to dismiss the Debtor's case and also filed a motion for relief from stay. On December 7, 2016, the Debtor filed a motion (1) for sanctions against HSBC under Fed. R. Bankr. P. 7037, (2) in the alternative, to determine the sufficiency of responses to the requests for admission and to compel responses to the interrogatories, (3) to compel production of documents, and (4) for Debtor's attorney's fees and costs (the "Debtor's Motion"). And on December 13, 2016, the Debtor filed her voluminous objections to HSBC's motion to dismiss and motion for relief from stay. On December 19, 2016, the Court held a preliminary hearing on HSBC's motion for relief from stay and set dates for HSBC to file its response to the Debtor's Motion (December 23, 2016) and for the Debtor's reply, if any (December 30, 2016). The Court informed the Parties that after it issued its decision on the Debtor's Motion, it would then set a telephonic hearing on HSBC's motion for relief, HSBC's motion to dismiss, Debtor's objection to

HSBC's claim, and the status of the Debtor's Plan. HSBC filed its response on December 22. On the same day, it filed a motion for protective order.

Through the Court's excavation of the tidal wave of paper, the Debtor did attach a signed copy of HSBC's responses to her requests to admit and requests for production. ECF No. 59, pp. 821-846. Digging through this pile of paper discloses that much of the Debtor's filings are duplicative.

Despite the dates set by the Court, the Debtor filed a "Compel Supplement" of 202 pages on January 10, 2017, and what purports to be a Declaration Certification under Rule 7037. On January 31, 2017, HSBC moved to strike the supplement. The motion to strike was denied by the Court for the reason stated in a separate order.

## Statement of Facts

This Chapter 13 case began as any other until HSBC filed an objection to the Debtor's Chapter 13 Plan. Thereafter, the Debtor has buried the Court and HSBC in an avalanche of paperwork. Aside from the 1,380-page response to HSBC's Plan objection, the Debtor has filed an 860-page motion for sanctions under Rule 7037, a 223-page objection to HSBC's claim no. 3, a 223-page consolidated supplemental objection to HSBC's claim no. 3 and response to the HSBC motions, a 223-page objection to HSBC's motion to dismiss, and a 54-page objection to HSBC's motion for relief from stay.

The Debtor's discovery requests include 50 requests for admission, interrogatories that seem to number 12 but which actually total 36 taking into account the interrogatories' subparts, and 67 document requests. HSBC

explains that on November 23, 2016, it was clear it would not be able to furnish Debtor's counsel with all of its intended responses to her discovery requests. ECF No. 73, p. 2. HSBC then reached out to Debtor's counsel to request an extension of the discovery deadline "in an attempt to meet and confer in good faith pursuant to FRCP 26(f)." Debtor's counsel responded with an ultimatum indicating that to secure an extension, HSBC would have to waive all objections. *Id.*

The November 25, 2016, HSBC discovery response was subject to supplementation. It included objection to any discovery request related to its standing to enforce the note. HSBC further stated it did not include responses to the Debtor's interrogatories, and it intended to provide them by December 26, 2016, as the information became available. ECF No. 73, p. 3. It appears Debtor's counsel received HSBC's responses to the interrogatories on January 6, 2017. ECF No. 82, p. 1. A supplemental response to request to admit no. 31 and to interrogatories was served on January 31, 2017.

The cause for this paper landslide relates to how and to whom the Debtor proposes payment of her note and mortgage through her Chapter 13 Plan. The Plan at paragraph 3 lists "NONE" as secured claims for valuation or surrender. It then continues, however, to apparently acknowledge the existence of a note and mortgage encumbering her real property in Dane County, Wisconsin. However, it provides there shall be no "pay[ment] on any claims for the first lien mortgage debt . . . pending determination of the identity of the entity, if any,

5

entitled to receive payment or performance of a security interest . . . ." ECF No. 33, p. 3.

HSBC filed a claim asserting the right to payment. It is the plaintiff named in a judgment of foreclosure. It was a claimant in the Chapter 13 of the Debtor's spouse, Steven Lisse. The Debtor and her spouse objected to HSBC's right to foreclose in Dane County Circuit Court on the ground the note and mortgage, presented as original documents endorsed in blank by HSBC were, in the words of Debtor's counsel "just plain fraud" and that HSBC was not the "true holder" or owner of the note. This position, or a variation on it, was repeated in Mr. Lisse's bankruptcy and is reiterated in this case. The Debtor disputes HSBC as the holder of the note and mortgage. Consequently, in lieu of committing funds through her Plan to pay the note's holder, the Debtor proposes to make her "cure" payments and post-petition mortgage payments to her attorney's trust account to be held pending determination of the party entitled to payment and resolution of various potential other matters in an as yet unfiled adversary proceeding.

HSBC asserts the Debtor has already challenged its standing in *HSBC Bank USA, Nat'l Ass'n for the Benefit of ACE Securities Corp. Home Equity Loan Trust, Series 2006-NC3, Asset Backed Pass-Through Certificates v. Steven R. Lisse, et.al.*, Case No. 10-CV-2642 ("Reconsideration Hearing"), where Judge Colas found HSBC was indeed the holder of the original note and mortgage encumbering the Debtor's real property and had standing to enforce the note. ECF No. 74, pp. 30-31. He considered the Debtor's argument of "fraud" and

"true ownership" and rejected them, finding the original documents had been presented by HSBC, HSBC was in possession of the originals, they were the holders, the note was endorsed in blank without recourse, and under Wisconsin's adoption of the UCC that made HSBC the holder and entitled to enforce or collect on the note and mortgage.

The Debtor has not asserted that HSBC assigned the note and mortgage to another creditor since Judge Colas's ruling. As noted, the Debtor's non-filing spouse also disputed the standing of HSBC, disputed the authenticity of the note, and proposed payments into the attorney's trust account in his bankruptcy proceeding. Mr. Lisse's bankruptcy, after an evidentiary hearing on plan confirmation, was dismissed on the ground the proposed treatment of the mortgage debt could not work for a number of reasons and had "all the earmarks of [ ] an effort to continue a fight, which could be and was made in the state foreclosure action, in the Bankruptcy Court." ECF No. 56, Exh. J, pp. 51-52.

From the Debtor's cascade of papers, the Court is left to conduct its own "Big Dig" to identify the specific discovery responses that are alleged improper or inadequate or for which further response should be compelled, and to unearth the facts and claims that bear directly on or relate to the Debtor's Motion under Rule 7037.

Regarding the Debtor's Motion, HSBC argues the Debtor has not met her obligations under Fed. R. Civ. P. 37 (made applicable in bankruptcy under Fed. R. Bankr. P. 7037) because her counsel's ultimatum constitutes a lack of good

7

faith to meet and confer. In addition, HSBC contends the Debtor's Motion should be denied because the Debtor collaterally attacks its standing as a holder of the Debtor's note. The Bank also argues the Debtor's Motion does not include a certification that the Debtor has in good faith conferred or attempted to confer with opposing counsel to obtain the propounded information without court action.

## **Discussion**

Under Fed. R. Civ. P. 37(d)(1)(B), "a motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." The Court may quickly dispose of the Debtor's request for sanctions against HSBC on this ground. While a document purporting to satisfy the requirements of Rule 37(a)(1) was filed, it was filed substantially after the motion.

As the Court dug through the pile of pleadings, it was again readily apparent that Debtor's counsel failed to certify under Fed. R. Civ. P. 37(a)(1) that she conferred or attempted to confer in good faith with HSBC before bringing her motion to compel. Based on this Court's review of the record, Debtor's counsel merely delivered an ultimatum by e-mail when HSBC asked for an extension. The e-mail demand that all objections be waived if any extension would be granted buttresses the conclusion there was no good faith effort to confer made before the motion was filed. An ultimatum made prior to the motion dispels even a suggestion of a good faith effort to confer regarding

8

discovery disputes. While it is the case the parties had some exchange, it was not certified before the motion. The exchange frames the Debtor's view of the deficiencies of the responses to be that all relevance objections must be withdrawn and the interrogatories be "fully" responded to meaning, apparently, that answers acceptable to the Debtor be provided to all interrogatories and other discovery requests.

In addition to her failure to certify before filing the motion, the Debtor's interrogatories exceed Rule 33's limit on the number of written interrogatories by including several discrete subparts. While Rule 33 does not specifically define "discrete subparts," it is generally understood that "a discrete subpart is one that is not logically or factually subsumed within and necessarily related to the primary question." 2 *Moore's Manual: Federal Practice and Procedure*, § 15.25[3][b] (Matthew Bender). These considerations are, alone, sufficient to deny the Debtor's Motion.

As stated, any certification by Debtor's counsel regarding attempts to resolve the matters were filed well after the Debtor's Motion. As of January 6, 2017, HSBC submitted its responses to the Debtor's discovery requests, including its responses to the Debtor's interrogatories. Despite the deficiencies with the Debtor's Motion that support summary denial, the Court will nonetheless address the merits of the challenges to the sufficiency of HSBC's responses.

Under Fed. R. Civ. P. 36(a)(6), made applicable to this proceeding through Fed. R. Bankr. P. 7036, the requesting party may move to determine

9

the sufficiency of an answer or objection. "Unless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6).

The Debtor's Motion asking the Court to determine the sufficiency of HSBC's responses is tantamount to deeming a matter admitted. *See Moore's Manual: Federal Practice and Procedure, supra,* § 15.28[6][b]. The party opposing the challenge to the sufficiency of the response has the burden of persuasion to show the court that the objection to the request is warranted, or that the answer to the request is sufficient. *Id.* The Debtor's Motion does not specify which answers are insufficient or sought to be compelled. Instead, the Debtor apparently expects the Court to exhume from the flood of papers she filed specifics of what may or may not be insufficient.

The majority of the Debtor's discovery requests relate to her argument that HSBC does not have standing to enforce the promissory note accompanying her mortgage. The question of HSBC's standing was answered by the circuit court, as affirmed by the state court of appeals. At the Reconsideration Hearing, Judge Colas clearly concluded:

> The bank [HSBC] has brought into court today a document that I've determined to be an original document. It is the note and the mortgage, two documents in this case which appear to be the original documents. On the face of it they are the holders of those documents because they're right there on the table here in the courtroom in possession of the bank's [HSBC's] counsel and . . . the note is endorsed in blank without recourse by the original lender.
>
> ***
>
> [T]here was no evidence presented on summary judgment or the last time we saw a document here in court in April of last year to rebut the bank's [HSBC's] contention that they are the holders of

10

> the original note and mortgage and my examination today persuades me of that. And there is no evidence offered today that that's not the original note and mortgage, and I think under the law they are holders of the note and entitled to collect on it.

ECF No. 74, pp. 30-32.

The Debtor appealed. In a *per curiam* decision, the Wisconsin Court of Appeals affirmed, concluding "the court granted summary judgment to HSBC because the court correctly concluded that the undisputed facts established that HSBC had physical possession of the original note." *HSBC Bank USA ex rel. Ace Secs. Corp. v. Lisse*, 2016 WI App 26 ¶8, 367 Wis. 2d 749, 877 N.W.2d 650 (Unpublished).

Standing determines whether a particular party is the proper person to pursue claims for federal court adjudication. *Davis v. FEC*, 554 U.S. 724, 733, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008). Standing also focuses on whether the party has the requisite stake in the outcome of the dispute. A similar, and related, concept is that of the real party in interest. Both concepts address a party's right to pursue an action as a claimant.

In fact, the concept of real party in interest may be viewed as a more stringent one. Thus, a real party in interest always has standing to sue or prosecute a claim while not every party who has standing is automatically a real party in interest. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984), and *American Nat'l Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455, 459 (7th Cir. 1982). A real party in interest is a person entitled by substantive law to bring a claim for relief or to enforce an

11

action or claim. The substantive law may be either state or federal substantive law.

Despite Judge Colas's finding and the Wisconsin Court of Appeal's decision affirming, the Debtor continues to purport that the original note and mortgage HSBC produced at that hearing is a "forgery" and thus that it lacks standing. ECF No. 59, p. 7 n.4. At bedrock, the state court held a hearing finding HSBC to be the holder of the Debtor's original note and mortgage, the Debtor appealed, and the Wisconsin Court of Appeals affirmed. Raising the issue in this Court is an apparent effort to erode those decisions.

The parties make much ado about whether *Rooker-Feldman* precludes this Court from addressing HSBC's standing. The position of the Debtor regarding the enforcement of the note and mortgage and the person entitled to payment is the identical position repeated by her in the state court proceedings. Thus, it is inextricably intertwined with the state court judgment and *Rooker-Feldman* may apply and would preclude this Court from addressing the standing issue. However, based on the Debtor's position regarding the doctrine, the Court will also address whether the issue of HSBC's standing is more appropriately analyzed under issue preclusion. The Debtor had the opportunity to petition the Wisconsin Supreme Court for review. Instead, she filed a bankruptcy and, effectively, asks this Court to second-guess the state court regarding who is entitled to collect on and enforce the note and mortgage.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give a state court judgment the same preclusive effect it would have in the

state court. *See Dollie's Playhouse, Inc. v. Nable Excavating, Inc. (In re Dollie's Playhouse, Inc.)*, 481 F.3d 998, 1000-01 (7th Cir. 2007). Foreclosure proceedings are proper state court actions. Since the prior litigation took place in a Wisconsin state court, Wisconsin law on issue preclusion applies. For issue preclusion to apply, two criteria must be present: (1) whether the issue was actually litigated in the prior action and was necessary to the judgment, and (2) whether the application of issue preclusion would be fundamentally unfair. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 772-73 (7th Cir. 2013).

With respect to element one, the issue of HSBC's standing was actually litigated in state court, the Debtor appealed, and the Wisconsin Court of Appeals affirmed. The state court's decision on standing was necessary to the judgment because whether or not HSBC could pursue foreclosure against the Debtor necessarily stemmed from whether it could enforce the note.

Next, would the application of issue preclusion be fundamentally unfair? The Court answers that question with a resounding no. Courts look to the following factors to determine whether applying issue preclusion would be unfair: (1) the availability of review of the first judgment, (2) whether there are two distinct claims or intervening contextual shifts in the law, (3) differences in the quality or extensiveness of proceedings between the two courts, (4) shifts in the burden of persuasion in that the party seeking preclusion had a lower burden in the first matter than in the second matter, and (5) whether matters of public policy are involved and the adequacy of the loser's opportunity or

incentive to obtain a full and fair adjudication of the initial action. *Michelle T. v. Crozier*, 173 Wis. 2d 681, 668-69, 495 N.W.2d 327 (1993).

In addition to meeting the two elements, to have preclusive effect a judgment must also be final. A judgment is final when it disposes of the matter in litigation as to one or more parties. *Anchor Sav. & Loan Ass'n v. Coyle*, 148 Wis. 2d 94, 435 N.W.2d 727 (1989). A final judgment can be the basis for preclusion despite the fact an appeal is pending or could be taken in the future. *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158-160 (7th Cir. 1995). When a judgment is appealed, its preclusive effect remains unchanged during the pendency of an appeal despite the fact it could be affected by the appellate court's disposition of the case. This parallels, in many ways, the statutory requirements (both state and federal) that generally appeals of right may be taken only from "final decisions." *See* 28 U.S.C. § 1291; Wis. Stat. §§ 808.03, 809.10(4), 809.62. The state court concluded HSBC possessed the note. "Thus, HSBC is entitled to enforce the note because HSBC possesses the note, and evidence about the ownership of the note is not relevant to that inquiry." *HSBC Bank USA ex rel. Ace Secs. Corp.*, 2016 WI App 26 ¶ 8 (Unpublished).

The Debtor appealed the state court judgment, and she was fully represented by counsel. Review of the judgment was clearly available as confirmed by the fact the Debtor appealed it. There are no distinct claims or intervening shifts in law because the bankruptcy court would have to look to state law on negotiable instruments to determine whether HSBC is a holder

and the applicable state law remains unchanged. There were extensive proceedings in the state court. The Debtor's objections before this Court and the state court are exactly the same. Thus, issue preclusion applies with respect to standing.

**Production of Documents**

With that background and context, regarding the Debtor's request for production, HSBC objected to the following requests for production of documents: Nos. 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, and 57. Specifically, the Debtor's request for production for these Nos. provides that "if you denied Request for Admission No. __ produce the documents upon which you rely in denying Request for Admission No. __." HSBC did not deny the referenced requests; it merely objected to the relevance of the request for admission based on its holder status. The Court finds these responses justifiable and sufficient in light of the preclusive effect of the state court judgment.

**Interrogatories**

The Debtor must secure a court order or a written stipulation from the responding party to serve more than 25 interrogatories on HSBC. Fed. R. Civ. P. 33(a)(1). The propounding party bears the burden of persuasion that the additional interrogatories are necessary under the circumstances of the case. 2 *Moore's Manual: Federal Practice and Procedure, supra,* § 15.25[3][c]. When a party is served with interrogatories in excess of the numerical limits, the

15

responding party may elect to answer the first 25, and object to the remainder. Here, HSBC provided some type of response to each interrogatory; it had the opportunity to object to the number. The Bank even noted that the Debtor propounded 36 interrogatories; accordingly, it appears HSBC waived its objection to the number of interrogatories served. *In re Dow Corning Corp.*, 95-CV-20572, 2010 WL 3927728, at *12 (E.D. Mich. 2010).

"Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Under Fed. R. Civ. P. 33(b)(4), "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."

Turning to HSBC's responses to the Debtor's interrogatories, HSBC has provided responses to interrogatory nos. 1, 2, and 3. With respect to interrogatory nos. 4, 5, 6, 7, 9, 10, 11, and 12,[1] HSBC objected to these interrogatories on the basis of relevance, since its standing to enforce the note and mortgage had already been litigated. ECF No. 82-1, pp. 5-6. With regard to interrogatory no. 8, the Debtor propounds: "Identify the entity making payments to ACE Securities Corp. Home Equity Loan Trust, Series 2006-NC3 in the current amount of $815.20." To which HSBC responded: "There is no entity currently making payments of $815.20 per month on the Debtor's loan account. To the extent that this interrogatory requests information regarding payments to the ACE Securities Corp. Home Equity Loan Trust, Series 2006-

---

[1] Debtor's propounded interrogatories contain a typographical error in numbering. Interrogatory No. 7 on page 6 should be counted as Interrogatory No. 9, and so on.

16

NC3 that are not paid to the Debtor's loan account, Creditor objects on the ground that this information is not relevant to any claim or defense of any party in this case." *Id.* at 7. HSBC's responses to these interrogatories are sufficient.

**Requests to Admit**

The Court finds HSBC's objections to the Debtor's request for admission nos. 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 48, 49, and 50 sufficient. Each relates to standing.

Based on Judge Colas's finding and the court of appeals affirming that decision, HSBC is the proper holder of the Debtor's original note and mortgage, and this Court finds the Debtor's discovery requests relating to HSBC's standing as irrelevant. Any challenge to HSBC's standing at this point would require this Court to revisit Judge Colas's findings in the state court action. Further, the Debtor does not allege intervening facts occurred between the state court proceedings and this one that would indicate HSBC assigned the note. In fact, HSBC has attached a copy of both the note and mortgage to its proof of claim and they were presented at an evidentiary hearing in Steven Lisse's bankruptcy.

Requests 1, 7, 25, 31-33, and 45-47 were answered with admissions or denials. While the Debtor may not agree with the answers, for the purpose of responses they are sufficient.

17

Requests 3, 5, 24, 30, 37, 39, and 43 all request admissions that exhibits may be admitted into evidence without further authentication. Beyond HSBC's objection to the requests on the grounds of relevance, the decision to admit or refuse to admit an exhibit and to determine its relevance is the province of the Court and not the parties. The requests go beyond genuineness of the exhibits and waiver of further authentication. No further response to those requests should be required.

HSBC responded to requests 1, 7, 25, 31, 32, and 33. While Debtor may dispute the responses, they do contain admissions or denials. Regarding request to admit no. 31, HSBC denied this request for admission in its supplement on January 6, 2017. Specifically, it states Select Portfolio Servicing acquired the loan from Countrywide on August 16, 2012. The creditor cannot speak to the prior servicer's acceptance of payments occurring prior to July 1, 2009. But HSBC does state, "[I]t appears that a payment was accepted from the borrower on or about July 1, 2009." ECF No. 82-1, p. 3. Those responses are sufficient.

While the responses were, in part, served beyond the 30-day period under the Rules, HSBC sought to confer about responses and an extension of time and it did provide Debtor's counsel with its responses on January 6, 2017. For these reasons, the Debtor's Motion is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: March 6, 2017

BY THE COURT:

_____
Catherine J. Furay
U.S. Bankruptcy Judge